Jules Brody, Esq.
Howard T. Longman, Esq.
**STULL, STULL, & BRODY**
6 East 45th Street
Suite 500
New York, NY 10017
Tel: (212)-687-7230
Fax: (212)-490-2022



Gary S. Graifman, Esq.
Michael L. Braunstein, Esq.
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Suite 200
Chestnut Ridge, NY 10977
Tel:    (845) 356-2570
Fax:    (845) 356-4335



*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## OF THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RALPH F. MILLER, on Behalf of Himself and All Others Similarly Situated,** | Case No. |
| **Plaintiff,** | **CLASS ACTION** |
| **v.** | **COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS** |
| **THE RESERVE , THE PRIMARY FUND, RESRV PARTNERS, INC.,  BRUCE R. BENT, BRUCE R. BENT II, ARTHUR T. BENT III, WILLIAM VIKLUND, JOSEPH D. DONNELLY, EDWIN EHLERT, JR., WILLIAM J. MONTGORIS, FRANK J. STALZER, SANTA ALBICOCCO, STEPHEN P. ZIENIEWICZ, RONALD J. ARTINIAN and PATRICK J. FARRELL,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

08 CIV 8098

SEP 18 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff individually and on behalf of all other persons similarly situated for his Complaint against Defendants alleges as follows:

## INTRODUCTION

1.    This is an action by and on behalf of persons who purchased shares of the Primary Fund (Ticker: RFIXX) (the "Fund"), during the period September 28, 2007 through September 16, 2008, inclusive (the "Class Period"),  against the Fund's underwriter, investment adviser, officers and directors and the other Defendants for violations of the disclosure requirements of federal securities laws. The Fund's Registration Statements and Prospectuses, and documents which constituted a part thereof, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and/or omitted to state material facts required to be stated therein, relating, *inter alia,* to (i) the lack of true diversification of the Fund's assets and exposure to, at minimum, now largely worthless debt securities valued at $785 million of now defunct Lehman Brothers Holdings, Inc.("Lehman Brothers"), (ii) the fact that the Fund's risk profile was **not**, as claimed, only marginally higher than cash, (iii) the high vulnerability of the Fund which suddenly and precipitously dropped below $1 per share to $.95 per share thus causing loss of principal, and (v) the fact that the net asset value of the Fund ("NAV") was highly speculative and inflated.

2.    Plaintiff, by and through his undersigned attorneys, brings this action upon personal knowledge as to himself and his own acts, upon the investigation conducted by and through Plaintiff's counsel as to all other matters, including without limitation, analysis of publicly available news articles and reports, public filings with the Securities and Exchange Commission ("SEC"), review of various web sites and Internet information sources, including the Reserve Fund's website (reservefunds.com/reservenews.shtml), news reports, press releases

and other matters of public record, prospectuses, Statements of Additional Information, annual and semi-annual reports issued by and on behalf of the Fund, and sales materials, and upon information and belief.

## JURISDICTION AND VENUE

3.     The claims asserted herein arise under and pursuant to §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §§ 77k, 77i and 77o.

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 22 of the 1933 Act.

5.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because the Defendants maintain offices in this District, are headquartered in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

6.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

7.     Plaintiff Ralph F. Miller acquired shares of the Fund pursuant to the registration statement and prospectus at issue in this complaint, as set forth in the accompanying certification, and has been damaged thereby.

8.     Defendant, the Reserve Fund, the registrant (sometimes referred to as "Registrant"or "Reserve") has its headquarters at 1250 Broadway, New York, New York 10001 and was organized under Massachusetts law on October 26, 1990.

9.     The Primary Fund is a member of the Reserve Fund family of funds and advised

by the Investment Adviser and employs Resrv, as defined below, as principal underwriter, transfer agent and shareholder services agent. Thus, the Fund is deemed to be under common control of Registrant.

10.     Defendant, The Reserve Fund, is headquartered at 1250 Broadway, New York, New York 10001 and is the Registrant of the Fund.

11.     Defendant Resrv Partners, Inc. ("Resrv" or "Underwriter") is also headquartered at 1250 Broadway, New York, New York 10001. Resrv is the principal underwriter with respect to the Fund's prospectus and is controlled by its officers and directors who are also Trustees and Officers of the Registrant, as well as officers and directors of the investment advisor to the Fund, Reserve Management Company, Inc. ("RMCI"), including Bruce R. Bent, Bruce R. Bent II, Arthur T. Bent III, Christina Massaro, Patrick J. Farrell and Catherine Crowley. Pursuant to a Distribution Agreement, Resrv was, during the Class Period, the principal underwriter for shares of the Funds and is agent for the purpose of the continuous offering of the Fund's shares.

12.     Defendant RMCI (also referred to as "Investment Advisor") has its headquarters also at 1250 Broadway, New York, New York **10001. RMCI is the investment advisor to the Fund. As the investment advisor, RMCI oversees the management and administration of the Fund. As compensation for these services, RMCI receives a management fee from the Fund.**

13.     Defendant Bruce R. Bent is the Chairman of Resrv, Chairman of RMCI, and Chairman, President, Treasurer and Trustee of Reserve. As a result of his positions with Resrv and RMCI, Mr. Bent is deemed to be a controlling person of the Investment Adviser and the Registrant.

14.     Defendant Bruce R. Bent ("BR Bent") is also Chairman, President, Treasurer and

Trustee of Reserve and the Fund. BR Bent **signed or authorized the signing of the false and misleading Registration Statement.**

15.     Defendant Bruce R. Bent II ("BR Bent II") was Co-Chief Executive Officer, Senior Vice President and Assistant Treasurer of the Registrant and the Fund and signed the Registration Statement dated September 28, 2008, the Statement of Additional Information ("SAI"), dated September 28, 2007, the Certified Shareholder Report of Registered Management Investment Companies filed with the SEC on or about February 8, 2008 and the Certified Shareholder Report for the year end May 31, 2008, filed with the SEC on or about August 8, 2008, both of which were documents incorporated by reference into the Prospectus and Registration Statement.

16.     Defendant Arthur T. Bent III (AT Bent III") was Co-Chief Executive Officer, Senior Vice President and Assistant Secretary of the Registrant and the Fund and signed the Registration Statement dated September 28, 2008, the Statement of Additional Information ("SAI"), dated September 28, 2007, the Certified Shareholder Report of Registered Management Investment Companies filed with the SEC on or about February 8, 2008 and the Certified Shareholder Report for the year end May 31, 2008, filed with the SEC on or about August 8, 2008, both of which were documents incorporated by reference into the Prospectus and Registration Statement.

17.     Defendants, William Viklund, Joseph D. Donnelly, Edwin Ehlert, Jr., William J. Montgoris, Frank J. Stalzer, Santa Albicocco, Stephen P. Zieniewicz and Ronald J. Artinian are all Trustees of the Registrant and the Fund and each signed the Registration Statement dated September 28, 2008, and the SAI.

18.     Defendant Patrick J. Farrell ("Farrell") was, at all relevant times, the Chief

Financial Officer of the Registrant and of the Fund and signed the Certified Shareholder Report of Registered Management Investment Companies filed with the SEC on or about February 8, 2008 and the Certified Shareholder Report for the year end May 31, 2008, filed with the SEC on or about August 8, 2008, **both of which were documents incorporated by reference into the Prospectus and Registration Statement.**

19.     The Defendants referenced above in paragraphs 14-18 are collectively referred to herein as the "Individual Defendants."

**THE FALSE AND DEFECTIVE REGISTRATION STATEMENT AND PROSPECTUS**

20.     This is a class action on behalf of all persons or entities who acquired the shares of the Fund during the period September 28, 2007 through September 16, 2008, inclusive, pursuant to the Fund's untrue or misleading Registration Statements and Prospectus dated September 28, 2007, and the documents filed and incorporated therein by reference (collectively, the "Prospectus") issued in connection with the continued offerings of the Fund's shares, seeking to pursue remedies under the 1933 Act.

21.     The Fund was marketed to investors as an income producing version of a money market fund, which offered a combination of safety and liquidity, or the ability to quickly access cash. The Fund's investment objective, as stated in the Prospectus was "to seek as high a level of current income *as is consistent with the preservation of capital and liquidity* ." (Emphasis added).

22.     The Fund was designed (as were the other related Reserve-issued funds) as "money market funds, designed as a convenient alternative to direct investment of temporary cash balances in short-term instruments."

23.     On September 28, 2007, Defendants began offering shares of the Fund pursuant to

the Registration Statement and Prospectus dated that same day, along with associated sales materials and advertisements, including web pages which also constitute a prospectus under the securities laws.

24.     The Prospectus stated, referring to the Primary Fund, among other funds, that "The Funds are money market funds, designed as a convenient alternative to the direct investment of temporary cash balances in short-term instruments. The Funds seek to employ idle cash at yields competitive with yields of other comparable short-term investments, and to reduce or eliminate the mechanical problems of direct investment, such as scheduling maturities and reinvestment, evaluating the credit of issuers, investing in round lots and safeguarding the receipt and delivery of securities. Each Fund invests only in short-term securities and seeks to maintain a stable $1.00 share price."

25.     The Prospectus further stated that "Because money market funds may only invest in securities with a lower level of risk, over time they may produce lower returns than investments in stocks or bonds, which entail higher levels of risk" and that "Investments in money market funds provide greater security and liquidity than other types of investments..." With regard to ease of liquidity, the Prospectus further represented that "Redemption requests received after the cut-off time for the calculation of a Fund's final NAV on any day will be redeemed at the net asset value calculated on the next business day. *Proceeds from a redemption request will be transmitted to a shareholder no later than the next business day after the receipt of the redemption request in good order.*" (Emphasis added).

26.     The Prospectus incorporated certain documents by reference. The Prospectus stated: "The Statement of Addition Information ["SAI"] contains additional and more detailed information about the Funds and is incorporated by reference into this Prospectus. Each Fund's

Annual and Semi-Annual Reports list the Fund's holdings, describe the Fund's performance, and include other information about the Fund's investments."

27.    On February 8, 2008, the Registrant filed a report for the period ending November 30, 2007 with the SEC, entitled "Certified Shareholder Report of Registered Investment Companies," which constituted a part of the misleading Registration Statement and Prospectus and the SAI which was incorporated by reference therein. The Report for the Primary Fund, for the semi-annual period ended November 30, 2008 ("Semi-Annual Report"), was filed on or about February 8, 2008, and signed by Defendants BR Bent II, Arthur T. Bent III and Farrell. The Semi-Annual Report's introduction was written and signed by Bruce R. Bent, dated, January 25, 2008 and stated:

> **The current liquidity and mortgage crises have provoked everyone- institutions, corporations and individuals- to question just how safe their cash really is. And it's about time.**
>
> **The management of a money market fund is counter-cultural to the vast majority of organizations that sponsor or manage virtually all the money funds because these organizations are not specialists in cash management. Rather they manage stock and bond funds, the focus of which is the highest rate of return, not safety of principal, liquidity and soundness of sleep.**
>
> **When we created the world's first money fund in 1970, we clearly stipulated the tenets that define a money fund: sanctity of principal, immediate liquidity, a reasonable rate of return— all while living under the overarching rubric of boring investors into a sound sleep. Unfortunately, a number of firms that sponsor money funds, and a number of investors that selected them, have lost sight of the purpose of a money fund and the simple rules that guide them in their foolhardy quest for a few extra basis points. . . . The cash entrusted to a money fund is your reserve resource that you expect to be there no matter what.... [T]his is your working capital to pay the rent, to finance inventory and receivables, to put food on the table. This is definitely not money to take risks with, and that is exactly how it should be managed. (Emphasis added).**

> We have been "accused" by some of asserting these tenets as if they were dogma, to which The Reserve pleads: Guilty as charged. If one focused on the goal of effective cash management, the truths to accomplish it are self evident and unequivocal, and reaching for yield while risking principal, liquidity or peace of mind is not among them. (emphasis added).

28.     The SAI, in addition, stated: "The Prospectus is incorporated by reference into this SAI and this SAI is incorporated by reference into the Prospectus. Each Fund's audited financial statements are incorporated by reference into this SAI from its Annual Report to shareholders for the fiscal year ended May 31, 2007 (the "Annual Report")."

29.     The Annual Report for the Primary Fund for the year end May 31, 2008 ("Annual Report"), was filed with the SEC on or about August 8, 2008, and signed by Defendants BR Bent II, AT Bent III and Farrell. The Annual Report was referenced in the Registration Statement and Prospectus and constituted a part of such Registration Statement and Prospectus. The introduction of the Annual Report, touted the ability of the Fund to provide safety of principal **despite the subprime crisis** versus other types of investments and was written and signed by Bruce R. Bent, and stated:

> Many dangerous Structured Investment Vehicles (SIV's) were folded by their sponsors which had the effect of taking matches from children that had proved themselves unworthy of the responsibility, underscoring my earlier points that not anyone can run a money fund. One year has passed since the subprime and SIV crisis shook the foundation of our markets, which has investors questioning the safety of their money funds. Good!

> We are pleased to report that you, and the markets in general, have embraced the very concept and foundation on which The Reserve was founded, an unwavering discipline focused on protecting your

principal, providing daily liquidity and transparency, and all the while boring you into a sound sleep. Experience has prevailed and as a result, The Reserve's assets grew by nearly 100% or 61 billion, over the past year.

30.    The Annual Report constituted a part of **or was incorporated by reference into,**

**the Prospectus and the SAI.**

31.    The Annual Report further stated that:

There has been no change in the Registrant's internal control over financial reporting (as defined in Rule 30a-3(d) under the Act) that occurred during the second fiscal quarter of the period covered by this report that has materially affected, or is reasonably likely to materially affect, the Registrant's internal control over financial reporting.

32.    The Annual Report constituted a part of the Prospectus and the SAI. The statements set forth above in paragraphs 24 through 27 and 29 **are materially false and misleading because while touting the Fund's devotion to safety of principal as "dogma" they failed to disclose the significant risks inherent in their strategy such as holding a substantial amount of the Fund's asset in the debt securities of Lehman Brothers, an investment banking company which by February 8, 2008 and by August 8, 2008, the dates the statements made by defendants in paragraphs 27 and 29 respectively, were made, and in fact as of the time of the Prospectus, on September 28, 2007, was widely known as experiencing significant losses and substantial instability as a direct result of its investments in residential mortgages through various forms of securitization.**

33.    For instance, on September 18, 2007 in a press release, Lehman Brothers reported very substantial valuation reductions on leveraged loan commitments and mortgage related positions within its Fixed Income Capital Markets. By January 17, 2008, Lehman Brothers announced it would substantially reduce its resources and capacity in the U.S. residential

mortgage origination space. Further by June 16, 2008, in announcing its second quarter results for its quarter ended May 31, 2008, Lehman Brothers reported a massive loss of $2.8 billion, in sharp contrast to profits for both the first quarter of 2008, and the comparable second quarter of 2007, denoting in no incertain terms its vulnerability to the then current economic woes emanating from the sub-prime crisis.

34.    Despite the turmoil in the financial markets and the substantial likelihood of overwhelming debt and loss in the financial institutions in which Defendants had invested in debt securities to a substantially higher degree than would be financially prudent, and particularly so for a money market fund purporting to have a corner on the market, as set forth in SEC-filed documents referred to above, for sanctity of safety of principal and immediate liquidity. This included investment by Defendants in the Fund of $785 million dollars, in face value, of debt securities of Lehman Brother, despite the above known facts described in paragraph 33 and the fact that Lehman Brothers had been rumored to be on the brink of bankruptcy for months. The September 16, 2008 letter revealed for the first time the Fund's reliance on this huge and risky investment and that the Fund would value this $785 million of Lehman debt securities at zero.

35.    In conjunction with that disclosure, on September 16, 2008, Defendants stunned the financial markets by announcing that for the first time in the history of their money market management, they were valuing the NAV of the shares of the Fund at less than $1.00 per share and thereby "breaking the buck." Thus, despite stating expressly in their SEC-filed documents, that investors in the Fund, invested therein to preserve cash, such as their the basic working capital "to pay rent, finance inventory and receivables, put food on the table" and "sleep soundly" knowing that the principal entrusted to Defendants was safe, Defendants stated that they were lowing the NAV of each share of the Fund to $0.97 per share. On September 18, 2008, it was

reported the value had further declined to $0.95 per share.

36.     Furthermore, as reported in The New York Times on Wednesday, September 18,

2008 ("*Money Market Fund Warns Its Customers Face Losses*"), the stated value of the other

investments of the Fund were also at risk at the time of many of the statements defendants made

if they needed to be sold over a short period to pay for redemptions.  The article noted: "The

fund's financial records also show that more than half of its portfolio on May 31 consisted of

asset-backed commercial paper and notes from a host of issuers besides Lehman, few of them

names likely to be familiar to the financial markets.  If these arcane investments had to be sold or

cashed out quickly to meet redemptions, it is unclear what prices they would fetch or whether the

issuers would be able to return the fund's money promptly, said Keith Long, of Otter Creek

management, a hedge fund based in Palm Beach, Florida."

**37.     Moreover, despite the Prospectus touting the fact that shares which were
redeemed would be paid the following day, and despite the fact that Defendant BR Bent, in
his forward to the Semi-Annual Report, highlighted the importance to investors of the
Fund allowing "*immediate liquidity*" Defendants announced in the September 16, 2008
letter which disclosed the devaluation of the Fund's NAV to below $1.00 per share, that
there would be a hold placed on the redemption of shares of the Fund and that this would
prevent payment to investors seeking to redeem shares for at least seven (7) days.**

38.     The true material facts, or material facts omitted necessary to make the statements

made not misleading and/or omitted material facts required to be stated therein, were:

1.     the Fund was not well-diversified and was overly concentrated on debt

securities of a company that was tottering on the brink of disaster in a higher amount than was

prudent for a money market fund;

2.  There was not an unwavering discipline focused on protecting your principal, providing daily liquidity and transparency, and all the while "boring you into a sound sleep" as represented by Defendants;

3.  The immediate liquidity was illusory and not present;

4.  The promise of safety and sanctity of principal was materially false and not achievable in the current economic environment in light of the securities owned by the Fund;

5.  The ability to maintain the NAV at $1.00 was tenuous because of the undue weight by the Fund in investments which were riskier in an effort to seek higher yield;

6.  the Fund's investment managers and officers did not have real expertise in valuing the mortgage backed securities they purchased, or assessing the risk or such investments' effect on the core goals of safety of principal and immediate liquidity;

7.  The Lehman Brothers debt securities, which in turn, relied on mortgage backed securities in which they were investing in to an unsafe degree were highly vulnerable to becoming illiquid; and

8.  the net asset values ("NAVs") of the Funds were speculative and inflated.

## CLASS ACTION ALLEGATIONS

39.  Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired shares of the Fund during the period September 28, 2007 through September 16, 2006, inclusive (the "Class Period") **traceable to the Company's false and misleading Registration Statement and Prospectus documents and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the Officers and Directors of the Resrv, RMCI, Reserve and the Fund, at all relevant times, members of their immediate families and their**

**legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.**

40.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Registrant or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

43.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. among the questions of law and fact common to the Class are:

        1.     whether the 1933 Act was violated by Defendants' acts as alleged;

        b.     whether statements made by Defendants to the investing public in the Registration Statement and Prospectus materials misrepresented material facts about the business, operations and management of the Fund; and

        c.     to what extent the members of the Class have sustained damages and the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

## VIOLATIONS OF SECTION 11 OF THE 1933 ACT AGAINST ALL DEFENDANTS

45.     Plaintiff repeats and incorporates each allegation contained above.

46.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77 k, on behalf of the Class, against all Defendants.

47.     The Registration Statements and Prospectus and documents which were referenced therein contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and/or omitted to state material facts required to be stated therein.

48.     The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

49.     None of the Defendants herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

50.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

51.     Plaintiff acquired the Fund's shares pursuant to the Registration Statement and

Prospectus and materials incorporated therein.

52.     Plaintiff and the Class have sustained damages. The value of the Fund's shares has declined substantially subsequent to and due to Defendants' violations.

**53.**     At the time of their purchases of the Fund's shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the untrue statements or omissions herein and could not have reasonably discovered those facts prior to September 16, 2008. **Less than one year had elapsed from the time that the Plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that Plaintiff filed this complaint. Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.**

## COUNT II

### VIOLATIONS OF SECTION 12(A)(2) OF THE
### 1933 ACT AGAINST ALL THE DEFENDANTS

54.     This Count II is asserted against Resrv as underwriter of the Funds' shares and the Individual Defendants as participants in the distribution of the Funds' shares through subsidiaries and trust departments of subsidiaries owned or controlled by Resrv or RMCI (hereinafter the"§12 Defendants").

55.     Plaintiff repeats and incorporates each and each allegation contained above as if fully set forth herein, except to the extent any allegations above contain facts which are unnecessary or irrelevant for purposes of stating a claim under Section 12, including allegations that might be interpreted to sound in fraud or relating to any state of mind on the part of the § 12 Defendants, other than strict liability or negligence.

56.     The §12 Defendants offered and sold a security, namely shares of the Fund's common stock, by means of a prospectus or were controlling persons of the Fund or of those who offered and sold the Fund's shares. **This prospectus contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading, which statements and omissions the §12 Defendants would have known, were false or were material facts which were required to be disclosed to avoid the representations which were made from being misleading.**

57.     The §12 Defendants actively solicited the sale of the Fund's shares to serve their own financial interests.

58.     Plaintiff did not know that the representations made to him in connection with the distribution to them by the §12 Defendants regarding the matters described above were untrue and did not know the above described material facts that were not disclosed.

59.     As a result of the matters set forth herein, pursuant to §12 (a)(2) of the 1933 Act, Plaintiff and Class members are entitled to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if they no longer own such shares.

60.     Plaintiff and putative Class members who do not opt out, hereby tender their shares in the Fund.

61.     The §12 Defendants are liable to Plaintiff and Class members pursuant to §12 (a)(2) of the 1933s Act, as sellers of the Fund's shares.

## COUNT III

## VIOLATIONS OF SECTION 15 OF THE 1933 ACT

## AGAINST THE INDIVIDUAL DEFENDANTS

62.     Plaintiff repeats and incorporates each allegation contained above.

63.     This Count is brought pursuant to §15 of the 1933 Act against the Individual Defendants.

64.     Each of the Individual Defendants was a control person of the Fund or the Defendant the Reserve entities by virtue of his or her position as a trustee and/or senior officer of the Fund or the Defendant Reserve and related entities. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other trustees and/or officers of the Defendant Reserve entities and the Fund.

65.     Each of the Individual Defendants was a culpable participant in the violations of §§ 11 and 12 of the 1933 Act alleged in the Counts above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process of issuing the Registration Statement and Prospectus.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, certifying Plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding recessionary damages; and

E.      Such equitable, injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 18, 2008

BY: _Jules Brody_

Jules Brody, Esq.
Howard T. Longman, Esq.
**STULL, STULL, & BRODY**
6 East 45th Street
Suite 500
New York, NY 10017
Tel: (212)-687-7230
Fax: (212)-490-2022

Gary S. Graifman, Esq.
Michael L. Braunstein, Esq.
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Suite 200
Chestnut Ridge, NY 10977
Tel:      (845) 356-2570
Fax:      (845) 356-4335

*Counsel for Plaintiff*

# CERTIFICATION OF LEAD PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

RALPH F. MILLER ("Plaintiff"), certifies as follows:

1.    I am an adult individual and make this Certification in support of the filing of the complaint in this action and my request for appointment as Lead Plaintiff in the within action.

2.    I have reviewed the complaint against The Reserve, The Primary Fund, related companies, and signers of the Registration Statement described in the complaint, approve the allegations made and authorize the filing of the complaint and/or a motion for lead plaintiff on my behalf by the law firm which filed the complaint, Kantrowitz Goldhamer & Graifman, P.C. and its co-counsel Stull Stull & Brody.

4.    My purchases of the Fund's shares, the securities which are the subject of this action, were not at the direction of counsel or in order to participate in this private action.

5.    I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and/or trial, if necessary. I understand that the litigation is not settled, that this is not a claim form, and sharing in any recovery is not dependent on execution of this Certification. I am willing to serve as a representative party either individually or as part of a group. I understand that a lead plaintiff is a representative party who acts on behalf of other class members in directing the action.

6.    To the best of my current knowledge, I have made no transactions during the class period, as set forth in the complaint, in the securities that are the subject of the action except as follows:

| Date | Type of Transaction (E.g., Purchase or Sale) | Amount of Shares | Purchase Price Per Share |
|------|----------------------------------------------|------------------|--------------------------|
|      |                                              |                  |                          |

| | | | |
|---|---|---|---|
| 6-12-08 | Bought | 63,343.48 | $1.00 |
| 6-20-08 | Bought | 194,626.94 | $1.00 |
| 6-20-08 | Bought | 38,287.33 | $1.00 |

7.     I have not served or sought to serve as a class representative in a federal securities case in the last three years.

8.     I will not accept any payment for serving as a representative party on behalf of the Class beyond Plaintiff's pro rata share of any recovery, except as ordered or approved by the court pursuant to section 27(a)(4) of the Securities Act, or section 21D(a)(4) of the Securities Exchange Act and including any award for reasonable costs and expenses directly relating to the representation of the class.

9.     The matters stated in this declaration are true to the best of my knowledge, information and belief.

10.     I hereby certify, under penalty of perjury that the foregoing is true and correct.

Dated: September 18, 2008

_____
RALPH F. MILLER

2